UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCISCO VACA,

       Plaintiff,                                      Hon. Janet T. Neff

v.                                                   Case No. 1:08-CV-653

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 25 years of age at the time of the ALJ's decision. (Tr. 28, 52). He successfully completed high school and was (at the time of the administrative hearing) two classes short of earning an associate's degree. (Tr. 324). Plaintiff worked previously as a stocker and utility worker. (Tr. 95-97).

Plaintiff applied for benefits on March 2, 2005, alleging that he had been disabled since January 15, 2005, due to bipolar disorder, depression, and frostbite to his feet. (Tr. 52-54, 68). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-52). On January 8, 2008, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff, Plaintiff's mother, and vocational expert, Dr. James Engelkes. (Tr. 317-36). In a written decision dated January 25, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 22-28). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 2-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On January 30, 2005, Plaintiff was admitted to Forest View Hospital, after exhibiting poor judgment and psychotic behavior. (Tr. 115-17). Plaintiff was subsequently diagnosed with bipolar disorder and he responded "well" to treatment and medication. (Tr. 111). Plaintiff was discharged on February 4, 2005, at which point he was "stable" and exhibiting "reasonably good judgment." (Tr. 111-14). Plaintiff was instructed to participate in counseling and continue taking his medications. (Tr. 111).

On April 21, 2005, Plaintiff completed a report concerning his activities. (Tr. 78-85). Plaintiff reported that he prepares meals, cleans his bedroom and bathroom, vacuums, takes out the garbage, reads, watches television, uses the internet, reads his email, "frequently" spends time with others, and cares for his dog. (Tr. 78-82). Plaintiff also reported that he can walk four and one-half miles. (Tr. 83). Plaintiff's mother completed a similar report the same day. (Tr. 86-94). She reported that Plaintiff reads, watches television, cares for his dog, prepares meals, washes dishes, sweeps and vacuums, and washes laundry. (Tr. 86-88).

On May 25, 2005, Dr. Paul Liu, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 149-62). Determining that Plaintiff suffered from bipolar disorder and major depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 150-58). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 159). Specifically, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate

4

difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 159).

Dr. Liu also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 163-66). Plaintiff's abilities were characterized as "moderately limited" in seven categories. (Tr. 163-64). With respect to the remaining 13 categories, the doctor reported that Plaintiff was "not significantly limited." (Tr. 163-64).

On June 1, 2005, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 168-71). Plaintiff claimed that he was unable to work because "he gets hysterical and cannot stay focused on a task." (Tr. 170). Plaintiff reported, however, that his condition had stabilized since he recently began taking medication to treat his bipolar disorder. (Tr. 170). The results of the examination were unremarkable. (Tr. 168-71). Plaintiff was diagnosed with "likely lower IQ" and an unspecified "psychiatric disease." (Tr. 168).

On April 20, 2006, Mark Cannizzaro, Ph.D., with whom Plaintiff had been treating since January 2005, reported that Plaintiff was compliant with his medication regimen and "currently attending classes at LCC." (Tr. 206). The doctor reported that Plaintiff was capable of working "in a more sheltered setting" and also would "benefit much from independent living." (Tr. 206).

In November 2006, Plaintiff began receiving assistance from Michigan Rehabilitation Services in his attempt to obtain employment in the clerical or administrative support fields. (Tr. 217-27). Plaintiff subsequently obtained a position as a Customer Service Representative with the

5

National Passport Information Center. (Tr. 234-43). Plaintiff was "doing well" in this job, but was later terminated because he was unable to obtain a security clearance. (Tr. 244).

At the administrative hearing, Plaintiff testified that he lived with his mother. (Tr. 327). Plaintiff reported that he reads, writes, uses the internet, cooks, washes laundry, vacuums, shops, visits with friends and family, and participates in student organizations. (Tr. 327-28). Plaintiff reported that his medication helps his condition. (Tr. 328). Plaintiff testified that he experiences no difficulty sitting and can walk 6-8 miles. (Tr. 329). Plaintiff's mother testified that Plaintiff's mood is "stable" when he takes his medication. (Tr. 331-32). In this regard, she reported that Plaintiff "is very, very good about taking his medication." (Tr. 332).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

6

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The ALJ determined that Plaintiff suffered from bipolar disorder, a severe disorder. (Tr. 24). The ALJ further determined that Plaintiff did not suffer from an impairment of combination of impairments that satisfied the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24). Finding that Plaintiff retained the ability to perform his past relevant work as a stocker and utility worker, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ Failed to Sufficiently Develop the Record

Plaintiff waived the right to representation at the outset of the administrative hearing and participated without the benefit of counsel. (Tr. 4-5). Plaintiff asserts that because the ALJ found that he suffered from bipolar disorder he was unable to waive his right to counsel.

Disability claimants possess a statutory right to legal representation at administrative hearings. *See* 42 U.S.C. § 406; 20 C.F.R. § 404.1705. However, this right is not of constitutional magnitude. *See, e.g., Mandziej v. Chater*, 944 F.Supp. 121, 130 (D.N.H. 1996); *Frank v. Chater*, 924 F.Supp. 416, 422 (E.D.N.Y. 1996). Nevertheless, the importance of legal representation in administrative proceedings has long been recognized. *See Goldberg v. Kelly*, 397 U.S. 254, 270-71 (1970) (in an administrative proceeding, "[c]ounsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the recipient"). Claimants must be informed of the right to counsel and any waiver of this right

must be made knowingly and voluntarily. *See, e.g., Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986).

The record reveals that Plaintiff was informed in writing, prior to the administrative hearing, of his right to be represented by counsel. (Tr. 37-38). At the outset of the administrative hearing, the ALJ orally advised Plaintiff of his right to be represented by counsel. (Tr. 5). The ALJ advised Plaintiff that "attorneys do not charge a fee for representation unless you win your case." (Tr. 5). Plaintiff was further informed that he may be able to obtain representation for free, from organizations such as Legal Aid. (Tr. 5). Plaintiff indicated that he understood his right to the assistance of counsel, but nevertheless decided to represent himself. (Tr. 5). The Sixth Circuit has indicated that in such circumstances a claimant's waiver of the right to counsel is knowing and voluntary. *See Duncan*, 801 F.2d at 855; *Johnson v. Commissioner of Social Security*, 97 Fed. Appx. 539, 542 (6th Cir., April 29, 2004).

The Court notes that even if Plaintiff's waiver of the right to counsel were not knowing and voluntary, such would not, by itself, entitle Plaintiff to relief. Plaintiff must also establish that he suffered prejudice as a result of his lack of representation, such as a failure by the ALJ to fully develop the administrative record. *See, e.g., Harrison v. Secretary of Health and Human Services*, 1986 WL 18491 at *3 (6th Cir., Dec. 4, 1986); *Skinner v. Astrue*, 478 F.3d 836, 841-42 (7th Cir. 2007); *Leach v. Barnhart*, 2004 WL 99935 at *7 (S.D.N.Y., Jan. 22, 2004).[2]

While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his

---

[2] It should be noted that unlike an improper waiver of the right to counsel, failure by the ALJ to fully develop the administrative record is a sufficient basis, by itself, to overturn the ALJ's decision. *See, e.g., Lashey v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983).

decision rests, regardless of whether or not the claimant is represented. *See*, *e.g.*, *Osburn v. Apfel*, 1999 WL 503528 at *7 (6th Cir., July 9, 1999) (quoting *Richardson*, 402 U.S. at 411) ("the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge"); *Echevarria v. Sec'y of Health and Human Services*, 685 F.2d 751, 755 (2nd Cir. 1982) (given the non-adversarial nature of a benefits proceeding, the ALJ "must himself affirmatively develop the record").

However, where the claimant is unrepresented, is incapable of "presenting an effective case," and is "unfamiliar with hearing procedures," the ALJ has "a special, heightened duty to develop the record." *Nabours v. Commissioner of Social Security*, 2002 WL 31473794 at *3 (6th Cir., Nov. 4, 2002) (citing *Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 856 (6th Cir. 1986)) and *Lashley*, 708 F.2d at 1051-52. This heightened duty arises from the remedial nature of the Social Security Act, as well as the recognition that "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Lashley*, 708 F.2d at 1051 (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (citations omitted).

Because this assessment is not readily amenable to the application of bright line tests, whether the ALJ has satisfied this special duty is to be determined on a case-by-case basis. *See Osburn*, 1999 WL 503528 at *7 (citation omitted). The absence of a bright line test does not mean, however, that the Court is without guidance when making this assessment. To the contrary, courts have articulated several concerns relevant to this determination.

First, reversal of the ALJ's decision is not warranted simply because an attorney would have better developed the record. Instead, "the key inquiry is whether the administrative law judge fully and fairly developed the record through a conscientious probing of all relevant facts." *Rowden v. Chater*, 1996 WL 294464 at *1 (6th Cir., June 3, 1996). Also, the ALJ is not required, when confronted with an unrepresented claimant, to factually develop matters regarding which he has no notice. *See, e.g., Rowden*, 1996 WL 294464 at *2; *Osburn*, 1999 WL 503528 at *7-8 (6th Cir., July 9, 1999) (a claimant must "support his subjective complaints with objective evidence" before the ALJ can be required to "develop a record" regarding such).

Failure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation. *See, e.g., Lashley*, 708 F.2d at 1052 (where the claimant "was only superficially questioned concerning his daily activities and his physical limitations," the ALJ failed to "fulfill his duty to develop *fully* the record"); *Rogers v. Sec'y of Health and Human Services*, 1986 WL 16548 at *3 (6th Cir., Feb. 28, 1986) (where the ALJ "did not even inquire into the claimant's emotional problems, or attempt to more fully understand his physical limitations," he failed to fully develop the record); *Echevarria*, 685 F.2d at 755-56; *Frank*, 924 F.Supp. at 428-29 ("the ALJ's cursory examination of [the claimant] was insufficient considering the importance to be accorded a claimant's testimony"). Such was the case here.

The administrative record before the ALJ revealed that Plaintiff had been diagnosed with bi-polar disorder and depression. At the administrative hearing, Plaintiff reiterated that he was unable to work due to depression and his bi-polar disorder. (Tr. 325). Despite the evidence that Plaintiff suffers from serious emotional impairments, the ALJ failed to ask Plaintiff any meaningful

10

questions about such. For example, Plaintiff testified that he was diagnosed with bi-polar disorder after he "was institutionalized for hearing voices and going out and doing stupid things." (Tr. 325-26). The ALJ never asked Plaintiff to describe or identify the "stupid things" he allegedly did or whether he continued to engage in similar activities. Furthermore, the ALJ never asked Plaintiff about the voices he allegedly heard or, more significantly, whether he continued to hear such voices.

As another example, Plaintiff testified that he never obtained a driver's license because his psychiatrist determined that he "should not be on the road." (Tr. 323-24). Rather than following up this response with questions designed to learn why Plaintiff's psychiatrist concluded that Plaintiff should not drive or what aspect of Plaintiff's impairments rendered him incapable of safely operating a motor vehicle, the ALJ simply proceeded to question Plaintiff about a completely different matter.

In short, the ALJ's questioning of Plaintiff is best described as perfunctory, cursory, and not designed to explore the complexities of Plaintiff's impairments. This is evident in the simplistic questions the ALJ asked and his failure to ask any meaningful follow-up questions in response to Plaintiff's testimony. It is further evident from the fact that the ALJ's examination of Plaintiff lasted only a few short minutes. The entire administrative hearing lasted only 33 minutes. (Tr. 319-36). The transcript of the proceeding is contained on 18 pages. The ALJ's examination of Plaintiff is contained on less than seven pages. Thus, the ALJ engaged in approximately 15 minutes of perfunctory questioning of Plaintiff. The ALJ also failed to inform Plaintiff that he had the right to keep the administrative record open for a period of time following the hearing should he wish to submit additional evidence. *See* 20 C.F.R. § 404.944. In sum, the Court concludes that the ALJ

failed in his duty to "fully and fairly [develop] the record through a conscientious probing of all relevant facts."

The Court recognizes that the ALJ "is under a duty to dispose promptly of claims and avoid unnecessary delays." *Lashley*, 708 F.2d at 1052. Nonetheless, a claimant's right to obtain a full and fair hearing cannot be sacrificed for the benefit of administrative efficiency. The Court is not suggesting that the ALJ intended to produce an unfair result. As the evidence detailed above reveals, however, the ALJ clearly failed to satisfy his obligation to fully develop the factual record in this matter, thus depriving Plaintiff of a fair hearing. Accordingly, the undersigned recommends that the Commissioner's decision be reversed and this matter remanded for further factual findings and evaluation.

## CONCLUSION

As articulated herein, the Court concludes that the ALJ violated Plaintiff's right to a full and fair administrative hearing. Accordingly, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                Respectfully submitted,

Date: August 18, 2009             /s/ Ellen S. Carmody
                     ELLEN S. CARMODY
                     United States Magistrate Judge